IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No:

MATTHEW DODSON,

    Plaintiff,

v.

ARCHULETA COUNTY
BOARD OF COUNTY COMMISSIONERS,

    Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Now comes the Plaintiff, Matthew Dodson, by and through counsel, and for his Complaint against Defendant states as follows:

## I.     INTRODUCTION

1. Plaintiff worked for Defendant Archuleta County Board of County Commissioners (the "County" or "Defendant") as the Director of the Human Services Department for eight years. Plaintiff received positive performance reviews and no disciplinary actions throughout his employment. In 2021, after one of Plaintiff's subordinate employees complained to the County Administrator and County Commissioners about not receiving a bonus, Plaintiff was verbally attacked, including through the use of discriminatory and offensive remarks, by the County Administrator. Plaintiff contacted each of Defendant's County Commissioners and Director of Human Resources to complain about the harassment and submitted a written statement. Following this, Plaintiff also filed a complaint regarding an employee who threatened him with physical

violence. Ultimately, Plaintiff submitted a letter of involuntary resignation. However, the County refused to accept his resignation and instead terminated Plaintiff's employment based on the findings of an investigation that was initiated because on Plaintiff's complaints.

## II. PARTIES

2. Plaintiff Matthew Dodson is an adult Caucasian homosexual male who was employed by the County from January 3, 2014 until January 13, 2022. He resides in La Plata County.

3. Defendant Archuleta County, Board of County Commissioners is a local Colorado government entity with its principal place of business located at 398 Lewis Street, Pagosa Springs, Colorado.

## III. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the federal causes of action in this Complaint pursuant to 28 U.S.C. § 1331, because they arise under the laws of the United States.

5. This Court holds supplemental jurisdiction, pursuant to 28 U.S.C. §1367, on the grounds that claims are so related to the federal causes of action over which the Court has original jurisdiction, that they form part of the same case or controversy.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because Plaintiff was employed and terminated in this District and the Defendant is a local Colorado government entity conducting its activities in Archuleta County, Colorado.

## IV. STATEMENT OF FACTS

7. Plaintiff commenced his employment with Defendant as the Director of the Human Services Department on or about January 3, 2014.

8. At all times Plaintiff was a loyal and dedicated employee. Throughout his tenure, his performance exceeded the County's legitimate expectations.

9. Plaintiff never received disciplinary action or any form of corrective action in relation to his performance until after he made reports to his employer about discriminatory comments and harassment.

10. In 2017, Plaintiff was awarded Director of the Year from the Human Services Directors Association and was recognized by Colorado Department of Human Services as a distinguished performer for four years.

11. At nearly every quarterly meeting where Plaintiff presented statistics from his department, Plaintiff was recognized by the County Commissioners as an exemplary leader within the County government.

12. In 2021, the County provided a bonus to employees who worked through the height of the COVID pandemic. However, the County Commissioners decided that any employee who took COVID related leave would be ineligible for the bonus.

13. Employees who did not receive the bonus were unhappy with this decision; Ms. Lacy Brown, one of Plaintiff's subordinate employees approached him to register a complaint about the decision to withhold the bonus for certain employees.

14. Plaintiff contacted the Director of Human Resources, Ms. Tina Woodman, to find out more information about the decision to withhold the bonus and to discuss the complaint he received.

15. Ms. Woodman informed Plaintiff that the Board of County Commissioners and Scott Wall were the decision makers and that he should direct the employee to register her complaint directly with them.

16. On or about September 15, 2021, Ms. Brown emailed the County Administrator and Commissioners registering her complaints about the retaliatory nature of the bonus, per the directions from Ms. Woodman in Human Resources.

17. Mr. Scott Wall, the County Administrator at the time, forwarded the email back to Plaintiff with the instructions that this was an "inappropriate communication directly to the Board" and that Plaintiff needed to "handle this for us."

18. Plaintiff immediately called Mr. Wall for further direction because he did not understand Mr. Wall's instructions or how he was supposed to "handle" the situation. In addition, Plaintiff sought more information regarding the decision to restrict the bonus from certain employees so that he could discuss the situation with better clarification with other upset employees in his department.

19. Mr. Wall got increasingly angry throughout this phone call and repeatedly rereferred to Plaintiff as a "butt buddy" in reference to his homosexuality. Mr. Wall had previously called Plaintiff this offensive name throughout the course of Plaintiff's employment with the County.

20. Plaintiff was having this conversation with Mr. Wall on speaker phone; Ms. Brown heard her name, came into Plaintiff's office, and also witnessed the call.

21. Plaintiff contacted Ms. Woodman and each of the Archuleta County Commissioners individually to report the harassment and discrimination. Mr. Dodson also submitted a written complaint on or about September 25, 2021.

22. No one from the County responded to Plaintiff's complaint or acknowledged any form of investigation into the incident.

23. Shortly thereafter, Plaintiff was shown a text from an employee under his supervision that the employee was having "a difficult time not punching that tiny man in the face" referring to Plaintiff.

24. Plaintiff contacted Human Resources and the County Attorney to report the threat of violence and a decision was made to terminate the employee.

25. On or about November 2021 Plaintiff met with Ms. Woodman, and the County Attorney, Mr. Todd Weaver, to discuss shortages in his department and that he needed to take on additional job responsibilities to help cover the personnel shortage.

   a. Specifically, the staff shortages required Plaintiff to act as CPS Supervisor, APS Supervisor, Case Manager, and after hour Supervisor because the department did not have any other staff certified to take these calls.

26. At this meeting Plaintiff requested additional duty pay, per Defendant's policy manual.

27. Plaintiff's pay was temporarily increased. However, Mr. Weaver informed Plaintiff that his pay increase would not be made permanent, stating that the Commissioners would not grant a pay adjustment because of complaints about Plaintiff's behavior.

28. Plaintiff had never been informed formally or informally about anything negative related to his job performance or behavior.

29. Plaintiff told Mr. Weaver that he felt these general allegations were in retaliation for his complaints about Mr. Wall and the COVID bonus.

30. Plaintiff asked for examples of specific performance deficiencies that were being relied upon for decreasing his pay.

31. Mr. Weaver was unable to provide any examples of specific performance issues.

32. In addition, in this meeting, Ms. Woodman and Mr. Weaver informed Plaintiff that the employee who threatened him with violence had been reinstated to his former position.

33. Plaintiff stated that he did not feel comfortable working with someone who threatened violence against him.

34. Plaintiff also told Ms. Woodman and Mr. Weaver that he was experiencing anxiety after his complaints regarding harassment and discrimination were ignored by the County.

35. Plaintiff requested leave to get his anxiety under control. The County ignored his request, and he never received any response to this request by Ms. Woodman, Mr. Weaver or anyone else from the County.

36. Ms. Woodman eventually directed Plaintiff to see a worker's compensation doctor to address his work-related stress and anxiety.

37. Plaintiff visited this doctor multiple times from November 2021 to January 2022 and was prescribed anti-anxiety medication.

38. In late 2021 Plaintiff was selected to sit on the interview panel for a new County Administrator. There were three finalists. One of the finalists was married to Ms. Woodman, the Director of Human Resources.

39. Plaintiff voiced his concerns to the interview panel and Commissioners that the County was even considering hiring Mr. Woodman because of his wife's position as Human Resources Director, and that it was a violation of the County's nepotism policy.

40. After Plaintiff raised these concerns, Ms. Woodman emailed Mr. Dodson and berated him for "questioning her integrity." Mr. Dodson responded and refuted that he had questioned her integrity.

41. Mr. Derek Woodman was selected as the new County Administrator in early December 2021 by the Archuleta County Board of County Commissioners by a vote of 2-1.

42. On or about December 22, 2021 Plaintiff was called to meet with Mr. Woodman, where Plaintiff was placed on administrative leave pending an investigation into his "behavior."

43. Plaintiff had never been formally or informally reprimanded or given any sort of corrective action or warning regarding any behavior at any time throughout the course of his employment with Defendant.

44. During Plaintiff's leave, he discovered that his email had been deleted as if he had already been fired.

45. Defendant kept Plaintiff on administrative leave until Plaintiff submitted a letter of involuntary resignation on January 15, 2022.

46. Immediately after Plaintiff submitted his resignation, he received an email from County Administrator Mr. Woodman with Director of Human Resources Ms. Woodman cc'd stating, "I am in receipt of your resignation. […] Your personnel records will reflect the fact that you are terminated and are not eligible for rehire. Attached is the termination document and the justification supporting your termination."

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Discrimination and Wrongful Termination because of Sexual Orientation in Violation of Title VII of the 1964 Civil Rights Act and the Colorado Anti-Discrimination Act (CADA) – 42 U.S.C. §§ 2000e, *et seq.* and C.R.S. §§ 24-34-401, *et seq.*)

47. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

48. As a homosexual, Plaintiff belongs to a protected class.

49. Plaintiff was fully qualified for his position.

50. Defendant, at all relevant times, knew that Plaintiff was being subjected to ongoing harassment and derogatory comments related to his sexual orientation.

51. During Plaintiff's tenure with Defendant, Defendant treated Plaintiff less favorably than similarly situated non-homosexual employees, failed to protect Plaintiff from the discriminatory conduct of his coworkers and direct supervisor, and terminated his employment on account of his protected class.

52. Defendant's conduct was intentional, willful, wanton, and malicious.

53. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered injury and damage for which he is entitled to compensation pursuant to Title VII of the Civil Rights Act of 1964 and CADA.

54. Because of Defendant's unlawful conduct, Plaintiff is entitled to judgment in his favor, and substantial economic, non-economic and punitive damages, in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
(Retaliation in Violation of Title VII of the 1964 Civil Rights Act and the Colorado Anti-Discrimination Act (CADA) – 42 U.S.C. §§ 2000e, *et seq.* and C.R.S. §§ 24-34-401, *et seq.*)

55. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

56. Plaintiff engaged in protected opposition to Defendant's unlawful employment practice of discriminating because of his sexual orientation by reporting instances of discriminatory conduct, discriminatory comments, and retaliation in the workplace.

57. Defendant permitted the harasser to voluntarily resign with a generous pay out of the balance of his contract and without any disciplinary action within days of the reports filed by Plaintiff and others about his sexual harassment.

58. Defendant, through its third-party investigator, proceeded with an investigation even after the harasser was no longer employed.

59. The investigation was subsequently converted into an investigation of Plaintiff.

60. Defendant terminated Plaintiff's employment shortly after Plaintiff engaged in opposition to the unlawful employment practice.

61. Defendant terminated Plaintiff's after receiving his voluntary resignation.

62. Plaintiff suffered adverse employment actions because of his opposition to Defendant's unlawful employment practices.

63. Defendant's conduct was intentional, willful, wanton, and malicious.

64. As a direct and proximate cause of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer injury and damage for which he is entitled to compensation pursuant to Title VII of the Civil Rights Act of 1964 and CADA.

65. Because of Defendant's unlawful conduct, Plaintiff is entitled to judgment in his favor, and substantial economic, non-economic and punitive damages, in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**
(Discrimination Because of Disability in Violation of ADA, ADAAA, and CADA– 42 U.S.C. §§ 12101, *et seq.* and C.R.S. §§ 24-34-401, *et seq.*)

66. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

67. Plaintiff has a disability as defined by law or was at least perceived as having a disability.

68. At all relevant times, Plaintiff was qualified for his position.

69. At all relevant times, Defendant knew or should have known of Plaintiff's disability.

70. Plaintiff suffered adverse employment actions, in part, because of his disability.

71. Defendant's conduct as alleged above constitutes wrongful discharge because of disability in violation of the ADA, the ADAAA, and CADA.

72. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer in jury and damage for which he is entitled to compensation pursuant to the ADA, the ADAAA, and CADA.

73. Because of Defendant's unlawful conduct, Plaintiff is entitled to judgment in his favor, and substantial economic, non-economic and punitive damages, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
(Failure to Accommodate in Violation of ADA, ADAAA, and CADA – 42 U.S.C. §§ 12101, *et seq.* and C.R.S. §§ 24-34-401, *et seq.*)

74. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

75. Plaintiff has a disability as defined by law.

76. At all relevant times, Plaintiff was qualified for his position.

77. At all relevant times, Defendant knew or should have known of Plaintiff's disability.

78. Plaintiff made multiple requests for a reasonable accommodation.

79. Defendant refused to engage in the interactive process and refused to accommodate Plaintiff's disability.

80. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer in jury and damage for which he is entitled to compensation pursuant to the ADA, the ADAAA, and CADA.

81. Because of Defendant's unlawful conduct, Plaintiff is entitled to judgment in his favor, and substantial economic, non-economic and punitive damages, in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
(Retaliation in Violation of the ADA, ADAAA, and CADA – 42 U.S.C. §§ 12101, *et seq.* and C.R.S. §§ 24-34-401, *et seq.*)

82. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

83. Plaintiff engaged in protected opposition to Defendant's unlawful employment practice of discriminating because of his disability and failing to accommodate his disability.

84. Defendant terminated Plaintiff's employment shortly after Plaintiff engaged in opposition to the unlawful employment practice after she engaged in opposition to the unlawful employment practice.

85. Plaintiff suffered adverse employment actions because of his opposition to Defendant's unlawful employment practice.

86. Defendant's conduct was intentional, willful, wanton, and malicious.

87. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer in jury and damage for which he is entitled to compensation pursuant to the ADA, the ADAAA, and CADA.

88. Because of Defendant's unlawful conduct, Plaintiff is entitled to judgment in his favor, and substantial economic, non-economic and punitive damages, in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
(Wrongful Discharge in Violation of Colorado Public Policy for Opposing and Reporting Threats of Violence in the Workplace)

89. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

90. Plaintiff reported a threat of workplace violence to his supervisor and Human Resources.

91. Fundamental public policy prohibits workplace violence in Colorado. *See* Sources Establishing Public Policy section, below.

92. Defendant terminated Plaintiff's employment, in whole or in part, to prohibit Plaintiff from his performance of an important public duty and right or from exercising an important job-related right or privilege of internally reporting a significant threat of workplace violence.

93. Defendant's termination of Plaintiff's employment undermines a clearly expressed public policy. *See* Sources Establishing Public Policy section, below.

94. Defendant, at all times, was aware, or reasonably should have been aware, that Plaintiff's activities were protected as important public duties, his rights as a citizen, or his job-related rights or privileges.

95. Defendant's conduct was willful and wanton and attended by circumstances of malice and reckless disregard for the rights of Plaintiff and was done to chill other employees' future exercise of their public and job-related duties and rights.

96. As a direct result of Defendant's actions, Plaintiff suffered and continues to suffer injuries, damages, and losses in an amount to be determined at trial.

**SOURCES ESTABLISHING PUBLIC POLICY**

97. Colorado Governor Roy Romer adopted a specific public policy regarding threats of violence in the workplace through Executive Order D0010 96. That Executive Order specifically states that:

   a. "The state will not tolerate violent behavior or the threat of violent behavior directed by anyone toward state employees, customers, clients, state property or facilities. Such behavior may result in corrective and/or disciplinary action if it is committed by a state employee, and/or criminal charges when appropriate." *August 13, 1996,* Executive Order D0010 96.

   b. "Violent behavior is defined as any act or threat of physical, verbal or psychological aggression or the destruction or abuse of property by any individual. Threats may include veiled, conditional, or direct threats in verbal or written form, resulting in intimidation, harassment, harm or endangerment to the safety of another person or property;" *Id.*

   c. "Employees who believe they have been subjected to behavior prohibited by this policy, or who have observed any such behavior should report the incident to their supervisor or other appropriate authority. The supervisor or appropriate authority will investigate and take appropriate action." *Id.*

98. Further, the Archuleta County Personnel Policy and Procedures Handbook prohibits violence in the workplace consistent with the state's public policy cited above.

a. **"Violence-Free Workplace:** The County is committed to preventing workplace violence and to maintaining a safe work environment, and therefore as a **ZERO TOLERANCE** policy against all forms of workplace violence. Engaging in any workplace violence or threats of violence may result in disciplinary action up to and including immediate termination of employment." *Id at* Section 305, p.39.

b. "Conduct that threatens, intimidates, bullies or coerces another employee or a member of the public at any time will not be tolerated." *Id.*

c. "No retaliation shall be taken against employees who pursue their rights under this policy." *Id at* Section 511, p. 64.

**SEVENTH CAUSE OF ACTION**
(Wrongful Discharge in Violation of Colorado Public Policy for Refusing Unlawful Instructions to Retaliate Against a Subordinate Employee for Opposing an Unlawful Bonus Payouts)

99. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

100. Plaintiff refused instructions to retaliate against and prevent a subordinate employee from complaining about a bonus structure made unlawful by the Families First Coronavirus Response Act (FFCRA).

101. Federal law prohibits retaliation for engaging in such protected activity. *See* Sources Establishing Public Policy section, below.

102. Defendant terminated Plaintiff's employment, in whole or in part, because Plaintiff refused instructions from his supervisor to "handle" a situation where his subordinate employee was complaining to her local government about being unlawfully excluded from a bonus for the sole reason that she took protected leave under the FFCRA.

103. Defendant terminated Plaintiff's employment after Plaintiff refused to follow an unlawful instruction to retaliate against an employee who was engaging in protected activity under federal law.

104. Defendant, at all times, was aware, or reasonably should have been aware, that Plaintiff's activities were protected as important public duties, his rights as a citizen, or his job-related rights or privileges.

105. Defendant's conduct was willful and wanton and attended by circumstances of malice and reckless disregard for the rights of Plaintiff and was done to chill other employees' future exercise of their public and job-related duties and rights.

106. As a direct result of Defendant's actions, Plaintiff suffered and continues to suffer injuries, damages, and losses in an amount to be determined at trial.

## SOURCES ESTABLISHING PUBLIC POLICY

107. The County unlawfully denied a bonus payment of $2,000 to any County employee who took federally protected leave during the pandemic, therein retaliating against employees who took leave pursuant to federal law.

108. An employee who engages in the protected activity of challenging an unlawful decision to retaliate against employees for taking federally protected leave is a violation of the Fair Labor Standards Act and Family Medical Leave Act as amended by the FFCRA.

109. The EPSLA division of the FFCRA amended and expanded the Fair Labor Standards Act ("FLSA"), 29 USC § 201, *et seq.*, to provide covered employees the ability to take paid sick leave related to the COVID-19 pandemic. The EPSLA language is directly derived from the FLSA, and the FLSA is referenced in Section 5105 – Enforcement of the FFCRA, where it states:

> (b) UNLAWFUL TERMINATION.—An employer who willfully violates section 5104 shall—

(1) be considered to be in violation of section 15(a)(3) of the Fair Labor Standards Act of 1938 (29 U.S.C. 215(a)(3))

110. Section 15(a)(3) of the FLSA states that it shall be unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." *Id*.

111. The EFMLA division of the FFCRA amended and expanded the Family Medical Leave Act ("FMLA"), 29 USC § 2601, *et seq.*, which also prohibits retaliation against employees who engage in protected activity.

112. Directing Plaintiff to "handle" an employee who was engaging in protected activity is a violation of the anti-retaliation provisions of the EPSLA and EFMLA divisions of the FFCRA.

**EIGHTH CAUSE OF ACTION**
(Wrongful Discharge in Violation of Colorado Public Policy for Prohibiting Plaintiff from his Performance of an Important Public Duty and Right or From Exercising an Important Job-Related Right or Privilege)

113. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

114. Archuleta County has written public policies prohibiting nepotism.   See, below.

115. Plaintiff specifically raised concerns about the fact that hiring Mr. Woodman as County Administrator, a position that oversees Human Resources, where Mr. Woodman's wife was the director, was a direct violation of this policy and could create significant problems and conflicts of interest in managing the County and its employees.

116. Defendant, through Ms. Woodman, prohibited Plaintiff from performing his job as a director of a county department who was appointed to a committee to assist the Commissioners in their hiring decision from engaging in his public duty and job related right or privilege of challenging the decision to consider Mr. Woodman for a position that would violate this public policy.

117. Defendant retaliated against and ultimately terminated Plaintiff's employment, in whole or in part, because Plaintiff engaged in his public duty and job related right or privilege of challenging the County's decision to consider and hire Mr. Woodman as County Administrator.

118. Defendant, through the Woodmans, retaliated against Plaintiff and ultimately terminated Plaintiff's employment, in whole or in part, to prohibit Plaintiff from his performance of an important public duty and right or from exercising an important job-related right or privilege of voicing opposition to Mr. Woodman as a candidate for County Administrator while his wife was the Human Resources Director.

119. Defendant, at all times, was aware, or reasonably should have been aware, that Plaintiff's activities were protected as important public duties, his rights as a citizen, or his job-related rights or privileges.

120. Defendant's conduct was willful and wanton and attended by circumstances of malice and reckless disregard for the rights of Plaintiff and was done to chill other employees' future exercise of their public and job-related duties and rights.

121. As a direct result of Defendant's actions, Plaintiff suffered and continues to suffer injuries, damages, and losses in an amount to be determined at trial.

**SOURCES ESTABLISHING PUBLIC POLICY**

122. Archuleta County Personnel Policy and Procedures Handbook dated December 2020 and adopted through Resolution Number 2016-22 states that, "Relatives may be employed by Archuleta County accept [*sic*] under the following conditions: One directly or indirectly would exercise supervisory, appointment, or dismissal authority or disciplinary action over the other. This includes actions such as hiring, promoting, determining pay rates or in any other way influence the employment status of a related persons. Relatives may not work for the same

immediate supervisor nor may they supervise each other;" Archuleta County Personnel Policy and Procedures Handbook, Section 105, p.13.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant and prays for:

A. Compensation for the loss of all the income, benefits, and privileges incurred from January 13, 2022 through the date of reinstatement or trial, as well as reasonable front pay, which amount cannot yet be ascertained;

B. Other compensatory damages, including but not limited to compensation for damage to Plaintiff's reputation, emotional distress suffered because of Defendant's unlawful conduct, and all other noneconomic damages Plaintiff so incurred;

C. Liquidated damages;

D. Prejudgment interest and post-judgment interest;

E. Punitive damages;

F. Reasonable attorney fees incurred in this action, pursuant to federal law;

G. The costs of this action; and,

H. Any further relief provided by statute or law and that the Court deems just or equitable.

### VII. JURY TRIAL DEMAND

Plaintiff requests a trial by jury.

Dated this 23rd day of March 2023.

          By:    <u>s/ David T. Albrechta</u>
                 ***David T. Albrechta, esq.*** (48431)
                 ***Eleni K. Albrechta, esq.*** (48429)
                 ALBRECHTA & ALBRECHTA, LLC
                 530 Main Avenue, Suite D3
                 Durango, Colorado 81301
                 Telephone: (970) 422-3288
                 E-mail: david@albrechtalaw.com
                            eleni@albrechtalaw.com

                 *Attorneys for Plaintiff Matthew Dodson*